Gkeen, J.
delivered the opinion of the court.
The defendant was indicted in the Overton circuit court, for passing counterfeit coin. The second count, of the indictment, charges, that “the said James Peek, on the said 1st day of February, 1838, with force and arms, in the county of Overton, in the “ State of Tennessee, fifty pieces of false, fraudulent, base and “ adulterated coins, falsely and fraudulently made and counterfeit- “ ed to the likeness and similitude .of the good, legal and current “ money and silver current coins in the said State of Tennes- “ see, called dollars, as and for pieces of such good, legal and cur- “ rent money, and silver coins, called dollars, then and there, false- “ ly, fraudulently and deceitfully, did utter, tender and pass to one “ Edward N. Cullom, he the said James Peek at the time he utter- “ ed, tendered and passed the said fifty pieces of false, fraudulent, “ base and adulterated counterf eit money and coins as aforesaid, “ then and there, well knowing the same to be false, fraudulent, “ forged, base, adulterated and counterfeit, against the form of “ the statutes,” &c.
The offence charged in the above indictment, is made felony by the act of 1829, ch. 23, sec. 39. The words in the act, in defining *84 the offence!, áre' as follows, viz: “No person shall make, or begin fei “ make, prepare or complete, or begin to prepare or complete any “ base or adulterated coin, in imitation of any coin which may be “ current in this State, either by law or usage. No person shall “ fraudulently pass or offer to pass any such base' dr adulterated “ coin,”
L The first point insisted orí by the counsel for the' plaintiff in error is, that the offence is not charged in the indictment with sufficient precision and certainty: because the word “dollar” used in the indictment, may mean, a Spanish dollar, a Mexican dollar, or a dollar of the United States; to pass either of which, would constitute an offence distinct from that which would be committed by passing one of either of the other description. It is certainly true, that an indictment must state all the facts and circumstances, that constitute the offence, with such certainty and precision, that the defendant may know whether they constitute an indictable offence or not, in order that he may know how to plead, and how to prepare his defenee; and that there, should be no doubt of the judgment that should be given, if the defendant be convicted. Arch. Cr. Plead., 42-3: Rex vs. Horne, Cowp., 675. Therefore, money is described as so many pieces of the current gold and silver coin of the realm. The “species’’ of coin must be specified. Arch. Cr. Pl. 50. As if it be a “sovereign,” a “guinea,” or a “shilling,” the indictment must so describe it. Bui it is not necessary tó describe the devices upon the pieces of forged coin; it is sufficiently certain if it be described as the King’s current gold; called a “sovereign,” (Archb. Cr. Pl. 387,) because the word “sovereign” conveys a distinct, definite idea of a particular species of coin: whether, therefore, it bear the “likeness” of William the fourth or Victoria, is immaterial, and would not contribute. to any of the great ends for which certainty is required. So in the case now before us, the indictment describes the “counterfeit coin” as “dollars.” And whether they be coins of the United States, or of Spain, or Mexico, they are equally current ip this State, of the same appearance, and value, gild the word applies as well to the one as to the other, and conveys the sama definite idea of each. The devices upon them are somewhat different, hut scarcely more so than an English shilling coined in the reign of William and Mary, and one coined in the reign of Victoria.
But it is said, the offence is different; not different it may be re *85 plied, in any other sense than the passing the counterfeit resemblance of two different English shillings would be. Our law puts the passing the counterfeit resemblance of all coin, current in the State, upon the same footing. The “offence,” therefore, is the same in criminality, and in punishment. The difference is only such as will distinguish one dollar from another by the devices upon them. But as that is immaterial in other coins of the same species, we see no reason why we should hold it to be material in this case, merely because these dollars are coins ,of different countries. The dollar of Spain, Mexico and the United States, are of the same species: they are of the same value, and of the same general appearance; and in reference to them, the word “dollar,” conveys the same general idea.
2. It is next objected, that the indictment does not pursue the words of the statute. The statute says, no person shall make coin in imitation ’of the coin current'in the State, or pass the same. The indictment omits the words “make in imitation,” and uses the words, made to the “li/ceness and similitude” of the current coin, &c.’
It is true, that where a statute creates an offence, the indictment itself must charge the facts and circumstances which constitute the offence as mentioned in the statute. And it is better to pursue strictly the words of the statute,'as it precludes all question about the meaning of the expressions used. Arch. Cr. Pl. 53. But where a word, not in the statute, is substituted in the indictment, for one that is, and the word thus substituted is equivalent to the word used in the statute, or is of more extensive signification than it, and includes it, the indictment will be sufficient. Arch. Cr. Pl. 52. As in the cases put in the books, where the word “knowingly” in the statute, was represented by the word “advisedly” in the indictment, or the word “wilfully” in the statute, by “maliciously” in the indictment. In these cases the indictments were good,because the words substituted were equivalent to those in the statute, or of more extensive signification. In the case now before us, this rule applies. The word “imitation” in the statute, is represented- in the indictment by the words likeness and similitude. Now these words certainly are of more extensive signification than the word “imitation,” and, therefore, do not, by their substitution, vitiate the indictment.
3. The nextobjection is,that the word “feloniously” is omitted in *86 the indictment; and it is certainly true, as a general rule, that an indictment for a felony, whether at common law or by statute, the word “feloniously” must be employed. Arch. Cr. Pl. 59. But the 72d section of the act of 1829, ch. 23, declares, that “all indict- “ ments for offences enumerated in this act, which are offences at “ common law, shall be good, if the offence be described or charged “ according to common law, or according to this statute.” The facts, which constitute the offence charged in this indictment, were an offence at common law, and although not of the same grade that the statute creates, still we understand the words of the above recited section to embrace the case. It does not confine the provision, that the common law indictment shall be good, to cases which were felonies at common law, nor do we suppose that it was so intended. The purpose of the legislature seems to have been to cut off all ground for cavil about mere forms, provided the party charged with the offence, were distinctly notified by the indictment of the nature of the accusation. So that if the facts which constitute an offence, be one by the statute and by the common law, an indictment, charging these facts, in the words used in the common law form, or in the words of the statute, shall be good.
4. The next objection is taken to the admissibility of Loftis’s testimony. The evidence of this witness was introduced to prove that the prisoner at another time than that charged in the indictment, passed other counterfeit coin'; and that to establish the guilty knowledge, that the coin charged in the indictment to have been passed, was counterfeit. Loftis says that he went to Peek, the defendant, to borrow money; defendant told him he could get it, and asked witness if he had any old Spanish milled dollars. Witness said that he had fourteen “flat heads.” Peek got them of witness, and gave in exchange fourteen more, purporting to be silver; seven old and seven bright new looking ones, resembling in appearance, the money passed to E. N. Cullom. The same bright new dollars were weighed by witness in scales and found wanting in weight; were suspected of being counterfeit by witness and neighbors, and returned to Peek, and were taken back and other money placed in their stead. This evidence was objected to at the time, but the objection was overruled. There is no doubt, but that evidence, that other counterfeit money was passed by the prisoner at other times, either before or after the offence for which he was indicted, is admissible, to show his guilty knowledge in the particular case. *87 Russ, on Cr. 86: Roscoe, Ev. 68. If a party charged with passing counterfeit money, has frequently passed other counterfeit money, especially, if it be of the same kind, it furnishes a strong presumption, 'that he knew it to be counterfeit. The accidents of trade can hardly be supposed to have placed in his possession so much spurious money; and if it be of the same kind, the presumption is greatly strengthened, because it indicates that he is a dealer in the article. But we are of opinion, that in order to render this evidence admissible, it must be proved that the money so passed was counterfeit. Roscoe, Ev. 68. It is not enough that there should be suspicion merely. If the coins or notes thus passed at another time, are not produced at the trial, so that, whether they are counterfeit or not, may be clearly established, the proof that they were counterfeit (so far as the belief and knowledge of the witness can go,) ought to be direct and positive. If such proof be not required, a man’s reputation and liberty might be endangered by the vague suspicions-of every person with whom he had dealt, and to whom he had paid money for a series of months, without the possibility of defending himself. The suspected money is not produced, so that its genuineness may be established, and the suspicion counteracted — and suspicions of witnesses, not amounting to belief, nor creating an opinion on their part, that such other money was counterfeit, is made the means of creating in the minds of the jury, the belief (not entertained by the witness himself,) that the prisoner is guilty.
It is contrary to the general rules of evidence, that proof of a transaction not charged in the indictment should be received at all. The certainty required in an indictment, is intended to give the party distinct notice of the facts charged against him, and to put him upon his defence. To permit evidence, therefore, of facts “not charged” ■in the indictment, would seem inconsistent with this view, because the party is not advised, by anything in the proceedings against him, that such facts are to be proved, until he hears the evidence on his trial. Hence such evidence is not allowable, except in cases where guilty knowledge constitutes the gist of the offence; and this from the necessity of the case. But it would be extremely dangerous to carry this exception to the general rule farther than it has gone; and that is to require proof that the money which was passed at another time was counterfeit. By proof we do not mean, that the coins must be assayed by one skilled in that art, *88 or that bank notes must be proved by the bank officers to be counterfeit, but the witness must be convinced of the fact, if the evidence depend upon opinion or if upon facts stated by him, they must be such as to establish the fact, that the money was counterfeit. This we think was not the character of Loftis’s testimony, and, therefore, are of opinion, that it was improperly received by the court below.
5. The rule insisted on by the Attorney General, that although incompetent evidence was received, yet if the court see that there was enough, independent of such evidence, to convict the prisoner, it will not disturb the verdict, does not prevail in this State. It has been uniformly held here, that if incompetent evidence has been received, that might have influenced the jury, a new trial will be awarded; for it cannot be seen how far such evidence did influence them, and we cannot say that the prisoner has been convicted by a jury of his peers, on evidence competent for that purpose. Reverse the judgment,